**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOSE CLAUDIO; WILLIE GOSIER, IZAYAH JOHNSON; MARIO LESLIE; AJAREL PATTERSON; DAVID ROBERTS; and GAMEIN WRIGHT,

               Plaintiffs,

v.

COUNTY OF ONEIDA; COUNTY OF ALBANY; ROBERT MACIOL, SHERIFF OF ONEIDA COUNTY; MARK KINDERMAN, ONEIDA COUNTY CHIEF OF CORRECTIONS; CRAIG D. APPLE, SR., SHERIFF OF ALBANY COUNTY; SERGEANT JAMES PATERNOSTER; CAPTAIN CLAYTON SMITH; SERGEANT "B." CHAPMAN; OFFICER SCOTT HOLBERT; OFFICER MICHAEL SPIELMANN; OFFICER MERZUK HOZANOVIC; OFFICER JENNA PEASE; OFFICER HUNTER CORCORAN; OFFICER JEFFREY JONES; JOHN DOE ONEIDA COUNTY SERT OFFICERS #1-20; LIEUTENANT ANTHONY TORRISI; LIEUTENANT MARK VALVO; LIEUTENANT RYAN LAWSON; LIEUTENANT ANTHONY COPPOLO; SERGEANT MICHAEL BONACCI; SERGEANT JOSEPH KELLY, JR.; OFFICER JOSIAH HALEY; OFFICER THUAN TON; OFFICER BRANDON LEGAULT; OFFICER THOMAS PLEAT; OFFICER CRAIG GIBBONS; OFFICER LEON POULIN; OFFICER JARRED JAROSZ; OFFICER A. WRIGHT; OFFICER STEVEN ALMINDO; OFFICER RYAN BARTLETT; OFFICER VINCENT LIVRERI; OFFICER SAMER MOHAMED ALI; OFFICER JEFF HART; ALBANY COUNTY OFFICERS A, B, G, S, and T,

9:25-cv-01615 (AMN/MJK)

1

Defendants.

_____

**APPEARANCES:**                          OF COUNSEL:

**KAUFMAN, LIEB, LEBOWITZ & FRICK LLP**    **DOUGLAS EDWARD LIEB, ESQ.**
18 East 48th Street – Suite 802            **ALYSSA D. ISIDORIDY, ESQ.**
New York, New York 10017
*Attorneys for Plaintiffs*

**ROTH & ROTH LLP**                        **ELLIOT DOLBY SHIELDS, ESQ.**
192 Lexington Avenue – Suite 802
New York, New York 10016
*Attorneys for Plaintiffs*

**MURPHY BURNS GROUDINE LLP**              **STEPHEN M. GROUDINE, ESQ.**
407 Albany Shaker Road
Loudonville, New York 12211
*Attorneys for Defendants and Cross Defendants*
*County of Oneida, Maciol, Kinderman, Paternoster,*
*Smith, Chapman, Holbert, Spielmann, Hozanovic,*
*Pease, Corcoran, and Jones*

**GOLDBERG SEGALLA, LLP**                  **JONATHAN M. BERNSTEIN,**
8 Southwoods Boulevard – Suite 300         **ESQ.**
Albany, New York 12211
*Attorneys for Defendants and Cross Claimants*
*County of Albany, Apple, Torrisi, Valvo, Lawson,*
*and Coppolo*

**MONACO COOPER LAMME & CARR, PLLC**       **ADAM H. COOPER, ESQ.**
1881 Western Avenue – Suite 200            **NORAH M. MURPHY, ESQ.**
Albany, New York 12203
*Attorneys for Defendants and Cross Claimants*
*Bonacci, Kelly, Haley, Ton, Legault, Pleat,*
*Gibbons, Poulin, Jarosz, Wright, Almindo,*
*Bartlett, Livreri, and Ali*

**NO APPEARANCES:**

**OFFICER JEFF HART**
*Defendant*

**JOHN DOE ONEIDA COUNTY**
**OFFICERS #1-20**
*Defendants and Cross Defendants*

2

**ALBANY COUNTY OFFICERS
A, B, G, S, and T**
*Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On November 14, 2025, plaintiffs Jose Claudio, Willie Gosier, Izayah Johnson, Mario Leslie, Ajarel Patterson, David Roberts, and Gamein Wright (each, a "Plaintiff" and, collectively, "Plaintiffs") commenced this action against defendants (i) County of Oneida ("Oneida County"), Oneida County Sheriff Robert Maciol ("Sheriff Maciol"), Oneida County Chief of Corrections Mark Kinderman ("Chief Kinderman"), Oneida County Captain Clayton Smith ("Captain Smith"), Oneida County Sergeant B. Chapman ("Sergeant Chapman"), Oneida County Sergeant James Paternoster ("Sergeant Paternoster"), Oneida County Officer Hunter Corcoran ("Officer Corcoran"), Oneida County Officer Scott Holbert ("Officer Holbert"), Oneida County Officer Merzuk Hozanovic ("Officer Hozanovic"), Oneida County Officer Jeffrey Jones ("Officer Jones"), Oneida County Officer Jenna Pease ("Officer Pease"), Oneida County Officer Michael Spielmann ("Officer Spielmann") (collectively, the "Oneida County Defendants"); (ii) County of Albany ("Albany County"), Albany County Sheriff Craig D. Apple, Sr. ("Sheriff Apple"), Albany County Lieutenant Anthony Coppolo ("Lieutenant Coppolo"), Albany County Lieutenant Ryan Lawson ("Lieutenant Lawson"), Albany County Lieutenant Anthony Torrisi ("Lieutenant Torrisi"), Albany County Lieutenant Mark Valvo ("Lieutenant Valvo"), Albany County Sergeant Michael Bonacci ("Sergeant Bonacci"), Albany County Sergeant Joseph Kelly, Jr. ("Sergeant Kelly"), Albany County Officer Samer Mohamed Ali ("Officer Ali"), Albany County Officer Steven Almindo ("Officer Almindo"), Albany County Officer Ryan Bartlett ("Officer Bartlett"), Albany County Officer Craig Gibbons ("Officer Gibbons"), Albany County Officer Josiah Haley ("Officer

3

Haley"), Albany County Officer Jeff Hart ("Officer Hart"), Albany County Officer Jarred Jarosz ("Officer Jarosz"), Albany County Officer Brandon Legault ("Officer Legault"), Albany County Officer Vincent Livreri ("Officer Livreri"), Albany County Officer Thomas Pleat ("Officer Pleat"), Albany County Officer Leon Poulin ("Officer Poulin"), Albany County Officer Thuan Ton ("Officer Ton"), Albany County Officer A. Wright ("Officer Wright") (collectively, the "Albany County Defendants"); and (iii) twenty John Doe Oneida County Officers and Albany County Officers A, B, G, S, and T (collectively, the "Doe Defendants" and, together with the Oneida County Defendants and the Albany County Defendants, "Defendants"), in connection with alleged events arising from an incident at the Oneida County Correctional Facility ("OCCF") on August 20, 2024.  Dkt. No. 1 ("Complaint").

Presently before the Court is the Oneida County Defendants' partial motion to dismiss. Dkt. No. 17 ("Motion"); *see also* Dkt. Nos. 55-56.  For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties and Relevant Entities

All seven Plaintiffs are residents of New York State.  Dkt. No. 1 at ¶¶ 13-19.  Plaintiffs Gosier, Johnson, Leslie, Roberts, Wright, and Patterson are Black men; Plaintiff Claudio is a Latino man.  *Id.*  In August 2024, Plaintiffs Claudio, Gosier, Johnson, Leslie, Roberts, and Patterson were

housed in Pod 8 of the OCCF. *Id.* at ¶¶ 13-17, 19. Plaintiffs Claudio, Gosier, Johnson and Leslie were pretrial detainees; Plaintiffs Roberts and Patterson had been convicted of contempt. *Id.* Plaintiff Wright was housed in Pod 4 of the OCCF as the result of a probation violation. *Id.* at ¶ 18.

Oneida County is a municipal corporation organized under New York State law. *Id.* at ¶ 20. Defendant Maciol is the Oneida County Sheriff. *Id.* at ¶ 22. Oneida County operates the Oneida County Sheriff's Office ("OSCO") and the OCCF. *Id.* at ¶ 20. Chief Kinderman is the Chief Deputy of Corrections for the OSCO. *Id.* at ¶ 23. Members of the OSCO staff the OCCF, including the Sheriff's Emergency Response Team ("SERT"). *Id.* at ¶¶ 1, 20. Captain Smith, Sergeants Chapman and Paternoster, Officers Corcoran, Holbert, Hozanovic, Jones, Pease, and Spielmann, and the twenty Oneida County John Doe Officers, are officers with the OSCO. *Id.* at ¶¶ 25-34.

Albany County is a municipal corporation organized under New York State law. *Id.* at ¶ 21. Defendant Apple is the Albany County Sheriff. *Id.* at ¶ 24. Albany County operates the Albany County Sheriff's Office, which staffs a Correctional Emergency Response Team ("CERT"). *Id.* at ¶ 21. Lieutenants Coppolo, Lawson, Torrisi, and Valvo, Sergeants Bonacci and Kelly, and Officers Almindo, Ali, Bartlett, Gibbons, Haley, Hart, Jarosz, Legault, Livreri, Pleat, Poulin, Ton, and Wright, and Albany County Officers A, B, G, S, and T are CERT Officers. *Id.* at ¶¶ 35-40, 42.

**B. Plaintiffs' Factual Allegations**

Broadly, Plaintiffs allege that members of the Albany County Sheriff's Office traveled to Oneida County, where they joined members of the Oneida County Sheriff's Office and, together, conducted "a coordinated, racially targeted, jail-wide raid" at the OCCF on August 20, 2024. *Id.* at ¶ 1. Plaintiffs assert that during this raid, Defendants "battered" them and "scores of other incarcerated individuals—overwhelmingly Black or Latino—who were already restrained,

compliant, and handcuffed." *Id.*

More specifically, according to Plaintiffs, Oneida County's Chief Kinderman contacted Albany County's Sheriff Apple on or about August 18, 2024 and requested that Albany County's CERT team be sent to the OCCF, where the CERT team would join Oneida County's SERT team to carry out the joint operation. *Id.* at ¶ 49. Sheriff Maciol allegedly "approved and authorized" Chief Kinderman's decision to utilize Albany County personnel for the joint operation. *Id.* at ¶ 22. Thereafter, CERT officers arrived at the OCCF in the early morning of August 20, 2024. *Id.* at ¶ 51. Plaintiffs allege that Chief Kinderman briefed the assembled teams. *Id.* The plan was purportedly for the CERT team to "take the lead entering each housing unit and making first contact with incarcerated individuals, while [the SERT] team would provide support (securing perimeters, operating cameras, and opening cell doors on [the CERT team]'s command)." *Id.* SERT officers were allegedly ordered not to interfere with the actions of the CERT officers, who were purportedly given "free rein in handling and ultimately assaulting incarcerated individuals" and would show these individuals "how it's done[.]" *Id.*

Plaintiffs allege that at approximately 9:30 a.m. on August 20, 2024, the CERT and SERT teams commenced the operation. *Id.* at ¶ 52. Over the next two to three hours, the teams "moved in formation, shouting commands, and simultaneously breaching cells" in the OCCF's general population Pods 5, 6, 7, and 8, as well as the protective-custody Pod 4. *Id.* Plaintiffs allege that Albany County's CERT officers took the lead, even though they were not wearing body cameras and had no canines present to detect contraband, decisions that Sheriff Maciol allegedly approved and authorized. *Id.* at ¶¶ 52, 22. Plaintiffs allege that as the CERT officers entered each Pod, they ordered incarcerated individuals to get down on the ground or face the wall. *Id.* at ¶ 53. Despite compliance, the CERT officers nonetheless proceeded to handcuff and beat numerous individuals,

including by punching, kicking, striking, and pepper spraying restrained incarcerated individuals directly in the face and eyes. *Id.* Plaintiffs allege that this conduct "focus[ed] on Pods 5, 7, 8, and 4, which overwhelmingly house Black and Latino incarcerated individuals (Pod 6, which is overwhelmingly white due to privileged placement programs, was mostly spared violence)." *Id.* Plaintiffs contend that throughout the operation, Oneida County personnel "either looked on or intentionally angled their body-worn cameras away to avoid recording the unconstitutional, unwarranted abuse." *Id.*

All seven Plaintiffs allege that they and others were violently assaulted during the raid, without provocation or justification. *See, e.g., id.* at ¶¶ 62-64, 93-97, 121-25, 151-61, 196-201, 225-32, 248-50. Each Plaintiff alleges that he suffered numerous injuries as a result. *See, e.g., id.* at ¶¶ 71, 107-10, 131, 176-78, 202, 236, 251.

According to Plaintiffs, dozens of incarcerated individuals submitted grievances and complaints in the days after the August 20, 2024 raid. *See, e.g., id.* at ¶ 266. A non-party OCCF lieutenant purportedly stated in an email to Chief Kinderman that a number of incarcerated individuals looked terrible that day and even worse the next day. *Id.*

Plaintiffs allege that, instead of properly addressing the many grievances and complaints following the August 20, 2024 raid, Oneida County officials covered up the misconduct. *See, e.g., id.* at ¶ 269. For example, Oneida County Sheriff's officials published a Facebook post that featured a photograph of several dozen Oneida County and Albany County personnel, did not mention any violence, and instead stated: "Thank you to Albany County Sheriff Craig Apple and the members of his Emergency Response Team for assisting . . . with a facility-wide sweep . . . [we] were able to conduct a thorough and effective sweep and get the facility back to normal operations quickly." *Id.* at ¶ 270 (alterations in original); *see also id.* at ¶ 8. Within the OCCF,

7

Officer Capra and a non-party officer "went through the housing units and issued a chilling warning to the incarcerated individuals: 'You better relax before we go get Albany County again.'" *Id.* at ¶ 271.  In response to inquiries by the New York State Commission of Correction and the New York State Attorney General's Office, Chief Kinderman purportedly "submitted written statements filled with demonstrable falsehoods[,]" including "that 'only minimal force was used,' that the incarcerated individual 'was not cuffed,' that the incident was a routine shakedown, [ ] that body-camera footage proved incarcerated individuals were resisting when they were struck," and "that detainees received prompt medical care and were fine." *Id.* at ¶ 272.

### C.  Plaintiffs' Legal Claims

Based on Plaintiffs' factual allegations, they assert seven legal claims against numerous Defendants:[1] pursuant to 42 U.S.C. § 1983 ("Section 1983"), (i) excessive force, in violation of the Eighth and Fourteenth Amendments, *id.* at ¶¶ 351-58; (ii) deliberate indifference to serious medical needs, in violation of the Eighth and Fourteenth Amendments, *id.* at ¶¶ 371-77; (iii) pursuant to 42 U.S.C. § 1985(3) ("Section 1985(3)"), conspiracy to violate civil rights, in violation of the Fourteenth Amendment, *id.* at ¶¶ 359-64; (iv) pursuant to 42 U.S.C. § 1986 ("Section 1986"), neglect to prevent conspiracy, *id.* at ¶¶ 365-70; pursuant to New York State law, (v) assault,

---

[1] Approximately three months before commencing this action, Plaintiffs' counsel filed a separate lawsuit on behalf of another plaintiff in connection with the events of August 20, 2024 at the OCCF, raising the same or similar claims against many of the same defendants, who are represented by the same defense counsel as here. *McNair v. Cnty. of Oneida et al.*, Case No. 25-cv-01135 (N.D.N.Y. filed Aug. 21, 2025).  Given the factual and legal overlap in the cases and that the Rule 16 conference in each has been adjourned, the cases would appear to be ideal for consolidation. *See, e.g., R.W. Grand Lodge of Free & Accepted Masons of Pa. v. Meridian Cap. Partners, Inc.*, 634 F. App'x 4, 6 (2d Cir. 2015) ("A district court may consolidate actions when there are 'common question[s] of law or fact' pending before it.  A party moving for consolidation 'must bear the burden of showing the commonality of factual and legal issues in different actions, and a district court must examine the special underlying facts with close attention before ordering a consolidation.") (alteration in original) (first quoting Fed. R. Civ. P. 42(a); and then quoting *In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)).

*id.* at ¶¶ 378-83; (vi) battery, *id.* at ¶¶ 384-89; and (xi) intentional inflection of emotional distress ("IIED"), *id.* at ¶¶ 390-96.  Plaintiffs seek, *inter alia*, damages and declaratory and injunctive relief. *Id.* at 83-84.[2]

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*,

---

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV.    DISCUSSION

In the Motion, the Oneida County Defendants seek dismissal of certain of the claims and Defendants identified in the Complaint. *See generally* Dkt. No. 17.

### A.  Section 1983

#### i.        Excessive Force and Failure to Intervene Claims

Plaintiffs' first claim under Section 1983, for excessive force and failure to intervene in violation of the Eighth Amendment (as to Plaintiffs Patterson, Roberts, and Wright) and in violation of the Fourteenth Amendment (as to Plaintiffs Claudio, Gosier, Johnson, and Leslie), is against Oneida County, Albany County, Sheriffs Apple and Maciol, Chief Kinderman, Captain Smith, Lieutenants Coppolo, Lawson, Torrisi, and Valvo, Sergeants Bonacci, Chapman, Kelly, and Paternoster, Officers Ali, Almindo, Bartlett, Corcoran, Gibbons, Haley, Hart, Holbert, Hozanovic, Jarosz, Legault, Livreri, Pease, Pleat, Poulin, Spielmann, Ton, and Wright, and the twenty-five Doe Defendants. Dkt. No. 1 at ¶¶ 351-58. The Oneida County Defendants argue that these claims should be dismissed as against (i) Sheriff Maciol, Chief Kinderman; (ii) Sergeant Chapman; and (iii) Captain Smith and Officers Corcoran, Hozanovic, Pease, and Spielmann, because the Complaint fails to plead the personal involvement of these Defendants in any alleged constitutional violation. Dkt. No. 17-1 at 6-10.

Under Section 1983, "'[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' is 'liable to the party injured.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d

Cir. 2023) (alterations in original) (quoting 42 U.S.C. § 1983).

"[I]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Morabito v. New York*, 803 F. App'x 463, 466 (2d Cir. 2020) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013)). A plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Pursuant to this requirement, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Keyes v. Venettozzi*, No. 18-cv-0372, 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) (citation and quotation marks omitted). In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) (citation omitted).

Nevertheless, "defendants need not actually 'pull the trigger,' or use force themselves, to be liable for excessive force as a direct participant." *Figuereo v. City of Saratoga Springs*, No. 23-cv-00922, 2025 WL 460784, at *9 (N.D.N.Y. Feb. 11, 2025). Rather, "[a] defendant who plans or directs an unreasonable use of force is liable for the resulting constitutional violation as a 'direct participant.'" *Id.* (quoting *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014)). "In this Circuit, a 'direct participant' includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi*, 764 F.3d at 234; *see also Campbell v. City of Yonkers*, No. 19-cv-2117, 2023 WL 4867459, at *9 (S.D.N.Y. July 31, 2023).

"Additionally, '[p]ersonal involvement of a supervisor may be established by direct participation in a constitutional violation or by showing that he created a policy or custom under

11

which the violation occurred.'" *Saratoga Black Lives Matter, Inc. v. City of Saratoga Springs*, No. 24-cv-00865, 2026 WL 710089, at *6 (N.D.N.Y. Mar. 13, 2026) (alteration in original) (quoting *Rindgen v. Cnty. of Broome*, No. 24-cv-1325, 2025 WL 2772080, at *17 (N.D.N.Y. Sept. 29, 2025)); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have determined that personal involvement still may be established for a supervisory defendant if he or she 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'") (collecting cases); *Dixon v. Farina*, No. 25-cv-00068, 2026 WL 482664, at *14 (N.D.N.Y. Feb. 20, 2026) (similar) (collecting cases). However, "conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement." *Rindgen*, 2025 WL 2772080, at *17 (citation omitted).

With respect to their excessive force and failure to intervene claims, Plaintiffs first argue that they have sufficiently alleged the personal involvement of Chief Kinderman and Sheriff Maciol as both direct participants and responsible policy makers. Dkt. No. 55 at 10-12. Accepting all well-pled allegations as true, Plaintiffs' argument regarding the direct participation of these two Defendants is persuasive at this stage. As Plaintiffs detail, they allege that Chief Kinderman: contacted Sheriff Apple on August 18, 2024 to request the deployment of Albany County CERT Officers at the OCCF; planned and directed the violent raid on August 20, 2024; briefed the Albany County CERT officers and the Oneida County SERT officers that morning, including purportedly instructing the latter to not interfere with the former during the alleged raid; and observed and oversaw portions of the subsequent raid. *Id.* at 11; *see also supra* Section II.B. As for Sheriff Maciol, he is alleged to have "approved and authorized" Chief Kinderman's decision to use Albany County personnel for the raid, as well as various aspects of the raid, including allowing Albany

12

County personnel to participate in the raid without wearing body cameras and without using canines to detect contraband. Dkt. No. 55 at 11. Further, Sheriff Maciol is alleged to have been present at the OCCF on August 20, 2024, and to be pictured in a photograph with several dozen members of the Oneida County SERT and Albany County CERT teams shortly after the raid. Dkt. No. 1 at ¶¶ 8, 22. In short, at this stage, Plaintiffs have sufficiently alleged the personal involvement of Chief Kinderman and Sheriff Maciol as direct participants in the purported raid.[3] Accordingly, the Complaint's excessive force and failure to intervene claims against Chief Kinderman and Sheriff Maciol are not subject to dismissal for lack of personal involvement, and the Court denies this portion of the Motion.

Plaintiffs next argue that they have sufficiently alleged the personal involvement of Sergeant Chapman as a direct participant.[4] Dkt. No. 55 at 12-13. This argument is based on a single sentence in the eighty-five page Complaint: that Sergeant Chapman was a supervisor "who helped muster the Oneida team for the raid and participated in searching pods." Dkt. No. 1 at ¶ 27. Plaintiffs proceed to argue that because Sergeant Chapman was a supervisor and present at the OCCF on August 20, 2024, he is responsible for the conduct of other correction officers throughout the facility. Dkt. No. 55 at 12-13; *but see Keyes*, 2022 WL 991402, at *6 ("[A] defendant in a Section 1983 action may not be held liable for damages for constitutional violations merely because [he or she] held a high position of authority.") (second alteration in original) (first quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); and then citing *Grullon*, 720 F.3d at 138); *Raven v. N.Y. State Dep't of Env't Conservation*, No. 25-cv-01624, 2026 WL 265965, at *6 (N.D.N.Y.

---

[3] As a result, the Court does not address whether the Complaint alternatively alleges the personal involvement of Chief Kinderman and Sheriff Maciol as policymakers with respect to Plaintiffs' excessive force claims under Section 1983.

[4] In contrast, Plaintiffs do not argue that they have alleged Sergeant Chapman's personal involvement as a policymaker. Dkt. No. 55 at 12-13.

Feb. 2, 2026) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*. . . . 'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983.") (alterations in original) (quoting *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003)).  While Plaintiffs allege that they were in two of the five Pods searched at the OCCF, Plaintiffs do not allege that Sergeant Chapman was ever present in, or aware of events in, either of these Pods—as the Oneida County Defendants correctly note.  Dkt. No. 56 at 3; *see also* Dkt. No. 17-1 at 8 ("The plaintiffs fail to plausibly allege facts that Sgt. Chapman applied any force to the plaintiffs, observed the alleged assaults, or even that Sgt. Chapman was present in Pod 4 and 8 at any point during the purported use of force."); *supra* Section II.A.  Thus, Plaintiffs' cursory allegations do not plausibly suggest that Sergeant Chapman used or directed excessive force against any Plaintiff on August 20, 2024, nor that Sergeant Chapman failed to intervene in the use of such force. *Tangreti*, 983 F.3d at 618.  As a result, the Court grants this portion of the Motion and dismisses Plaintiffs' excessive force claims against Sergeant Chapman.

Finally, Plaintiffs argue that they have adequately pled failure to intervene claims against Captain Smith and Officers Corcoran, Hozanovic, Pease, and Spielmann, based on allegations that, during the raid, Officer Corcoran was present in Pod 8 and the other four Defendants were present in Pod 4 and thus each of these Defendants had the opportunity to intervene, but failed to do so. Dkt. No. 55 at 13-14.  At this early stage, these allegations are sufficient for these claims to proceed to discovery.  Accordingly, the Court denies this portion of the Motion as to Plaintiffs' failure to intervene claims against these five Defendants.[5]

---

[5] To the extent that the Complaint alleges an excessive force claim—in addition to a failure to intervene claim—against Captain Smith and Officers Corcoran, Hozanovic, Pease, or Spielmann, however, any such excessive force claim is dismissed as abandoned. *Compare* Dkt. No. 17-1 at 8

14

### ii.   Deliberate Indifference

Plaintiffs' second claim under Section 1983, for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment (as to Plaintiffs Claudio, Gosier, Johnson, and Leslie) and in violation of the Eighth Amendment (as to Plaintiffs Patterson, Roberts, and Wright), is against Oneida County, Chief Kinderman, Sergeant Paternoster, and Officers Corcoran and Jones. Dkt. No. 1 at ¶¶ 371-77. The Oneida County Defendants primarily argue that these claims should be dismissed because (i) certain Defendants were not personally involved; (ii) certain Plaintiffs have not sufficiently alleged that they suffered serious injury nor received inadequate medical care; and (iii) Plaintiffs do not plausibly allege Chief Kinderman's deliberate indifference, nor that Oneida County has a policy or custom of denying medical treatment. Dkt. No. 17-1 at 12-20.

The parties agree that the assessment of this claim differs based on the detention status of the Plaintiffs. *See, e.g.,* Dkt. No. 17-1 at 13; Dkt. No. 55 at 18. For Plaintiffs Claudio, Gosier, Johnson, and Leslie, as pretrial detainees, this claim is "governed by the Due Process Clause of the Fourteenth Amendment, rather than Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted); *see also id.* ("A pretrial detainee's claims are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—

---

("The plaintiffs' excessive force claims against Cos. Pease, Hozanovic, Spielmann, Corcoran and Cpt. Smith must be dismissed because their complaint does not allege that [these Defendants] used any excessive force against them."), *with* Dkt. No. 55 at 13 (arguing only that "Plaintiffs' allegations state a plausible failure to intervene claim against Defendants Pease, Hozanovic, Spielmann, Corcoran, and Smith."); *see also Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.") (citation omitted).

neither cruelly and unusually nor otherwise.'"") (alteration in original) (citation omitted).  To establish such a claim, "the plaintiff must show that: (1) he had a 'serious medical need'; and (2) the defendant 'acted with deliberate indifference.'"  *Loveall v. Walker*, 807 F. Supp. 3d 148, 161 (N.D.N.Y. 2025) (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019)).  "Under the Fourteenth Amendment an official does not act in a deliberately indifferent manner toward an arrestee unless the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official *knew, or should have known*, that the condition posed an excessive risk to health or safety."  *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Darnell*, 849 F.3d at 35).

For Plaintiffs Patterson, Roberts, and Wright, who are incarcerated pursuant to a sentence imposed after conviction, this claim is governed by the Eighth Amendment.  "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'"  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "To prevail on an Eighth Amendment claim for deliberate indifference to medical needs, a plaintiff must show: (1) the inadequacies in his medical care were objectively serious (the objective test); and (2) the defendant acted with deliberate indifference to his serious medical needs (the subjective test)."  *Collins v. Figura*, No. 23-109, 2024 WL 1739084, at *1 (2d Cir. Apr. 23, 2024) (summary order) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).  "The term 'deliberate indifference describes a state of mind more blameworthy than negligence,' but it is a standard that 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 631 (2d Cir. 2025) (first

16

quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); and then citing *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996)). "This means 'that the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (alterations in original) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)).

However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Wright v. Martin*, No. 23-7762-pr, 2025 WL 1091221, at *3 (2d Cir. Apr. 8, 2025) (summary order) (first quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); and then citing *Estelle*, 429 U.S. at 107). And "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citations omitted).

As an initial matter, and contrary to the Oneida County Defendants' arguments, the Court finds that Plaintiffs have adequately alleged the personal involvement of Sergeant Paternoster and Officers Corcoran and Jones. For example, Plaintiffs Gosier and Patterson allege that they lost conscious and suffered serious readily apparent injuries as a result of the alleged assault, and that Officer Corcoran then denied them access to medical care. *Id.* at ¶¶ 101-02, 250-53. Plaintiff Roberts alleges that he was seriously and visibly injured as well, and that both Officers Corcoran and Jones nonetheless denied him access to medical care following his assault. *Id.* at ¶¶ 205-06. And Plaintiff Claudio alleges that Sergeant Paternoster similarly denied his request for medical care, despite his serious and readily apparent injuries. *Id.* at ¶¶ 71-73. Because Plaintiffs' allegations of personal involvement for each of these three Defendants are sufficient at this stage, the Court denies this portion of the Motion. *Tangreti*, 983 F.3d at 618.

17

The Motion is also denied with respect to the plausibility of Plaintiffs' deliberate indifference claims against these three Defendants. *See, e.g., McFadden v. Annucci*, No. 25-cv-1252, 2025 WL 3265447, at *30 (N.D.N.Y. Nov. 24, 2025) ("Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed.") (citations omitted). As Plaintiffs detail at length in their opposition to the Motion, they have adequately alleged that they suffered sufficiently serious injuries and that they received inadequate medical care as a result of deliberate indifference. Dkt. No. 55 at 18-31; *see also Vann v. City of Rochester*, No. 18-cv-06464, 2019 WL 1331572, at *7 (W.D.N.Y. Mar. 25, 2019) (denying motion to dismiss deliberate indifference claim given plaintiff's factual allegations). In addition to the allegations just discussed, for example, Plaintiff Roberts alleges that he was punched in the face, tackled to the ground, repeatedly kicked, punched, and stomped, and lost consciousness twice during the alleged assault; that he suffered serious and readily apparent injuries, including an orbital fracture, as a result; and that, despite his request, Defendants denied him access to medical care for hours. *See generally* Dkt. No. 1 at ¶¶ 198-211. The Court thus denies the Motion as to Plaintiffs' Eighth and Fourteenth Amendment claims against Sergeant Paternoster and Officers Corcoran and Jones. *Lara-Grimaldi*, 132 F.4th at 631; *Loveall*, 807 F. Supp. 3d at 161.

Finally, the Motion is denied with respect to Plaintiffs' Eighth Amendment and Fourteenth Amendment claims against Chief Kinderman and Oneida County. As just discussed, Plaintiffs have adequately pled the first prong of both claims. And the Court agrees with Plaintiffs that they have adequately alleged Chief Kinderman's deliberate indifference under the Eighth Amendment's subjective prong, recklessness under the Fourteenth Amendment's objective prong, as well as

18

*Monell* liability against Oneida County.  As Plaintiffs argue, Chief Kinderman allegedly planned and directed the raid that injured Plaintiffs; personally observed the aftermath of the raid, as well as Plaintiffs' condition; was aware of the OCCF's regular practice of denying medical care; and nonetheless failed to take remedial action.  Dkt. No. 55 at 32-33; *see also Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (citation omitted); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) ("Moreover, because a single action on a policymaker's part is sufficient to create a municipal policy, a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability.").[6]

### B.  Section 1985

Plaintiffs' second claim, pursuant to Section 1985(3), is that Sheriffs Apple and Maciol, Chief Kinderman, Captain Smith, Lieutenants Coppolo, Lawson, Torrisi, and Valvo, Sergeants Bonacci, Chapman, Kelly, and Paternoster, Officers Ali, Almindo, Bartlett, Corcoran, Gibbons, Haley, Hart, Holbert, Hozanovic, Jarosz, Legault, Livreri, Pease, Pleat, Poulin, Spielmann, Ton, and Wright, and the twenty-five Doe Defendants conspired to violate Plaintiffs' civil rights (as well as those of others) based on race.  Dkt. No. 1 at ¶¶ 359-64.  The Oneida County Defendants primarily argue that this claim should be dismissed because Plaintiffs have not plausibly alleged a conspiracy motivated by discriminatory animus.  Dkt. No. 17-1 at 11.  The Court finds this argument unpersuasive given Plaintiffs' allegations.[7]

To state a civil rights conspiracy claim under Section 1985(c), a plaintiff must allege:

---

[6] The Court incorporates here its prior discussion of *Monell* liability in the related case involving alleged events at the OCCF on August 20, 2024.  *See McNair*, Case No. 25-cv-01135, Dkt. No. 22, at 18-20.

[7] This claim nonetheless fails against Sergeant Chapman, who is not alleged to be personally involved with relevant events at all, as detailed earlier.  *See supra* Section IV.A.i.

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (quoting *Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir. 1991)). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Dolan*, 794 F.3d at 296 (citations omitted).

As detailed earlier, Plaintiffs allege that Chief Kinderman contacted Albany County's Sheriff; that Albany County personnel then traveled across several counties to Oneida County, where personnel from both counties proceeded to conduct a coordinated, racially targeted jail-wide raid at the OCCF, during which Oneida County personnel facilitated Albany County personnel in targeting housing units with predominantly Black and Latino individuals and assaulting those individuals, while largely sparing the housing unit with predominantly white individuals. *See supra* Section II.B; *see also Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 319 (N.D.N.Y. 2023) ("A conspiracy, for these purposes, need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'") (citations omitted). As Plaintiffs note, they also allege that several Defendants made statements during the raid from which racial animus can be reasonably inferred at this stage. Dkt. No. 55 at 16. Finally, Plaintiffs allege that an Oneida County policymaker approved the use of Albany County personnel for the raid, and subsequently approved the conduct of both Oneida County and Albany County personnel during the raid. *See, e.g.,* Dkt. No. 1 at ¶ 22. Because these allegations sufficiently allege a civil rights conspiracy motivated by racial animus, the Court denies this portion of the Motion.

### C. Section 1986

Plaintiffs' third claim, pursuant to Section 1986, is that Sheriffs Apple and Maciol, Chief Kinderman, Sergeant Paternoster, and any supervisory John Doe Oneida County Officers neglected to prevent the conspiracy just discussed. Dkt. No. 1 at ¶¶ 365-70.

The Oneida County Defendants argue only that without a viable predicate claim under Section 1985(3), this derivative claim under Section 1986 must also be dismissed. Dkt. No. 17-1 at 12; *see also Rizk v. City of New York*, 462 F. Supp. 3d 203, 227 (E.D.N.Y. 2020) ("In other words, a 'claim under 42 U.S.C. § 1986 for failure to prevent the violation of a person's civil rights may not exist absent a viable section 1985 claim.") (quoting *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 356 (N.D.N.Y. 2014)). Given the Court's decision above with respect to Plaintiffs' Section 1985(3) claim, this argument fails. *Lalonde*, 662 F. Supp. 3d at 322. Accordingly, the Court denies this portion of the Motion.

### D. New York State Law Claims

Plaintiffs' fifth, sixth, and seventh claims are against Oneida County and Albany County for assault, battery, and IIED under New York State law. Dkt. No. 1 at ¶¶ 378-96. Consistent with the Court's prior Memorandum-Decision and Order in the related case involving alleged events at the OCCF on August 20, 2024, and for the reasons detailed therein, the Court dismisses these claims as duplicative. *See McNair*, Case No. 25-cv-01135, Dkt. No. 22 at 26-28; *see also Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) ("Under New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'") (citations omitted); *Cheikhaoui v. City of New York*, No. 22-cv-08855, 2023 WL 5917646, at *9 (S.D.N.Y. Sept. 11, 2023) (applying New York State law to dismiss duplicative tort claim in Section 1983 action).

21

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Oneida County Defendants' motion to dismiss, Dkt. No. 17, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' (i) first claim for excessive force under Section 1983, as against Captain Smith, Sergeant Chapman, Officer Corcoran, Officer Hozanovic, Officer Pease, and Officer Spielmann; (ii) fifth claim for assault under New York State law; (iii) sixth claim for battery under New York State law; and (iv) seventh claim for IIED under New York State law, are **DISMISSED**; and the Court further

**ORDERS** that Sergeant Chapman is **DISMISSED** as a defendant in this action; and the Court further

**ORDERS** that the Oneida County Defendants' motion to dismiss, Dkt. No. 17, is otherwise **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 16, 2026
          Albany, New York

Anne M. Nardacci
U.S. District Judge

22